## MASTER OR FELLOW SERVANT.

[Cuyahoga Circuit Court, January Term, 1896.]

Caldwell, Hale and Marvin, JJ.

1. SUPERINTENDENT OF REPAIRS A FELLOW SERVANT.

In an action to recover of a dock company for injuries received by an ore handler, while in the service of the company, by reason of the falling of a piece of iron, from machinery which had gotten out of repair while in use, *Held:* That if the machinery got out of repair through the negligence of another of the company's employees, supposed to be competent and careful, whose duty it was to superintend repairs and to inspect said machinery and keep it in repair, and who had no control over the person injured, he is a fellow servant of the latter for whose negligence the person injured cannot recover from the company.

2. CONTRACTOR'S EMPLOYEES HELD TO BE FELLOW SERVANTS.

Where the dock company, for the loading of ore from its dock into cars at a specified price per ton, has entered into contract, for a definite time, with certain persons, whereby the company is to furnish and operate the hoisting machinery, and the contractors are to furnish men to handle the ore, and, by the terms of the contract, the contractors and their men are to be subject generally to the directions of the company, and the contractors agree to promptly discharge on the company's request, any men in their employ not satisfactory to the company, an employee of such contractors is a fellow servant with an employee of the company, where no relation of subordination or subjection exists between them.

3. QUESTION AS TO NATURE OF EMPLOYMENT SUBMITTED TO JURY.

Where the facts in relation to contract to perform certain work and to furnish men to do it, are defined entirely by a written agreement, which is put in evidence and undisputed, it is error to submit to the jury the question whether or not a servant of one of the parties to the contract is a co-employee with a servant of the other party, engaged in the same common employment, where no question of subordination between such servants is involved, for it is merely a matter of construction of the contract.

ERROR to the Court of Common Pleas of Cuyahoga county.

CALDWELL, J.

The plaintiff in error has a dock upon which is ore, and they take the ore from the dock and load it into cars. In doing this, the Dock company made a contract with certain parties, namely Fred Simon, William Russell, James Graulty, John Bohall and John Comerford, who are named in this contract as party of the first part, and the Dock company is named as party of the second part. The party of the first part was to handle this ore, and the Dock company was to furnish hoisting apparatus, machinery and malls and wedges to do it with. All other implements needed were to be furnished by the party of the first part, who were to handle this ore as the company should desire. The company was to furnish the power and run the machinery which handles the buckets, and the men named were to do the work.

The main question in the case is as follows :

One of the men employed by the party of the first part, who were to load ore and had the handling of it, was injured at work at this business, by the engineer employed by the defendant below, Dock company, through his negligence or the negligence of some persons who were working under him. It seems that out on the arm, or tramway, on which the bucket is run, an iron had got loose, by reason of the loosing of bolts, and when McCafferty, the defendant in error, was dumping the bucket, or about to dump it, that iron fell from somewhere above, and striking him on the arm, broke it. The persons who took care of this machinery for the Dock company, and who had the care of it, were one Brown, the engineer, and the other persons who assisted him, all of whom were employed by the company. The question of law involved in this case is : Can these contractors (for they are contractors, in one sense, for the loading of this ore at five cents per ton) and the persons in their employ, be fellow workmen with a person employed by the Dock company to run its engine, when the carelessness of the latter has contributed to or caused the injury? In one sense they have not a common master. The part of the contract applying to this question is as follows:

"Said first parties" (that is, these persons who were to load the ore) "further agree to constantly have abundant and sufficient men on hand, between the hours of 7 A. M. and 7 P. M., of each week day during the life of this contract, for the prompt and speedy loading with ore, all cars coming to and placed on said docks to be so loaded, and further agree that they and all employees of theirs engaged in the performance of this contract, shall generally be subject to the directions of said second party" (that is, the Dock company), "its superintendent and foremen, and shall operate all appliances belonging to said second party on said docks, with proper care and subject to the inspection and direction of said second party, its superintendent and foremen." The superintendent and foremen here spoken of are not the engineer or engineers who had charge of the repairs of this machinery.

The contract further provides: "Fourth—They further agree to promptly discharge any men in their employ not satisfactory to said second party on the request of said second party, its superintendent and foremen." This contract, by its express terms, makes the party of the first part, that is, the persons who load the ore, and their employees, subject entirely in this work to the directions of the Dock company, its foremen or superintendent. In the second place, the contract gives the Dock company a right to discharge any of the persons employed by these contractors; that is, if the Dock company requests the contractors to discharge them, then they must do so, which is simply equivalent to saying that the Dock company could discharge them.

With these elements, we proceed to examine this bill of exceptions. There are three errors complained of. In the first place, McCafferty's arm was broken by a piece of iron falling, and the petition and proof show that it was done by the machinery getting out of repair, and not because that machinery was not good and perfect when purchased. The court in its charge says: "I say to you that in the first instance it was the duty of the defendant to furnish for the purpose of conducting its business, that of loading iron ore from its dock to the railroad cars, its employees with ordinary machinery and appliances in an ordinarily safe and working condition, and if its failure to do so caused an injury resulting from such failure, without fault on the part of the person injured, it

would be liable." That was error. The ground of error there was that there is nothing in the petition, no issue and no evidence, as to whether or not the Dock company had furnished the proper kind of machinery; that is whether or not that machinery when furnished, was in bad condition. The whole matter turns on the question: Was it out of repair?

If an employer buying machinery, hires a person to buy it for him, and if that person has not exercised good judgment in doing so, or has not exercised good care in putting in the machinery, the fact that he is a mere employee does not exonerate his employer from paying damages for injuries resulting from such defective machinery. But if machinery gets out of repair without the employee's knowledge, and through the negligence of a person, supposed to be competent and careful, whom he has in his employ to superintend the repairs, and whose duty it is to inspect said machinery and keep it in repair, then we have two decisions in this state, which hold that such superintendent of repairs is a fellow servant with another employee, not subject to his control, who is injured through his neglect; and the person who is injured therefore cannot recover. *Railroad Companies* v. *Webb*, 12 Ohio St., 475; *Railroad Company* v. *Fitzpatrick*, 42 Ohio St., 318.

There being no evidence to show that there was any complaint an all as to the condition of this machine.y when it was put in there, the charge on this point, already quoted, was prejudicial to the defendant below. The jury may easily have said: "This machinery is good for nothing; the judge says if it was not good, the plaintiff McCafferty can recover." This is prejudicial, and the judgment must be reserved on that account.

The second point is this: The contract before referred to, is in writing and was put in evidence. It thoroughly establishes the relations between these parties, the contractors and the company. One of the questions in this case was: What is the relation? What is the relation between the plaintiff who was injured, and the engineer who had charge of the repair of the machinery? That was the question they were trying to solve below. If the relation of these two parties was determined by this contract, it was the duty of the judge to say whether they were co-laborers or not. Instead of that, the judge submitted it to the jury. Nearly all the questions of negligence are questions of fact and of law combined, but whenever the facts become settled, whenever they are without any dispute, then it becomes merely a question of law for the court. But as long as there is a dispute in regard to the facts, it is proper to submit that dispute to the jury. The facts here are determined entirely from this contract, and being merely a matter of construction of the contract, the judge had no right to submit that question to the jury. Now, it is said that the court erred in that respect, and the court did err. The judge charged the jury allowing them to detremine that question, and refused repeatedly to charge in such a way as to solve the question whether these persons could be co-employees or not. If these five persons were employed by this contract to load the ore into the cars (and I say this more because the case may be tried over again than anything else, and yet it is really in the record to determine whether or not this engineer and the plaintiff were co-employees), the mere fact that they had the loading of this ore by contract instead of by the day, may or may not make a difference. This was a contract for the year from May 1, 1891, to May 1, 1892, but though it is a contract

in one sense, and for a definite time, yet may not the parties who are to do that work be after all servants? The question is determined very largely by the nature of the contract. In the *City of Tiffin* v. *McCormack*, 34 Ohio St., 638, Judge McIlvaine delivering the opinion, the court, in its syllabus, second paragraph, says:

"The owner of a stone quarry hired a person 'to go into the quarry. quarry stone therein, break the same to a certain size, and pile them up so they can be measured,' and 'had no other or further control' over the employee, who was 'to furnish and find the gunpowder and other tools,' and receive compensation at the rate of $1 per perch; and the employee, by blasting with gunpowder, destroyed the buildings of an adjoining proprietor. Held, that the employer is liable for the injury inflicted by the employee."

Judge McIlvaine, speaking of this, says :

"But we are of opinion that the true relation between the city, as proprietor of the stone quarry, and Ardner, was that of master and servant instead of employer and independent contractor within the principle of the rule above stated. There was no 'job' or defined quantity of work contracted for. The services of Ardner were subject to be determined at the pleasure of either party. The compensation was to be measured by the quantity of labor performed." And then he says about their control of him, that is a mere matter affecting the rate of compensations. If he was the servant and they contracted not to control him, they could not do it. And if, without such a contract, they did not control, it was their fault.

The rule by which it is generally determined whether or not a person who does work by contract is a servant, is: Does the master keep control of the work and the workmen? Can the master at any time discharge those whom the contractor employs? And another test is: Does the master pay the subordinate, or do the contractors pay the subordinate? These are tests that are applied, and where any one of them exists, sometimes the court has determined that the relation between the one for whom the work is done and the one employed by the contractor is that of master and servant, in so far, that if the latter is injured by the negligence of one employed by the former in the same work, the master is not liable. The question before us is very close. The line is a very fine one, and quite uncertain in many cases where the courts have divided entirely upon these three questions: Had the master control of this person? Could the master discharge him? Was the master paying?

In this contract, we think that there was such control over these contractors and over this subordinate, and there was such power to dismiss him as to make him the servant of the company in so far that where this engineer or his subordinates, by their neglect, caused the injury, they were coservants with the injured, and the court should have so construed this contract, instead of leaving that matter to the jury.

Now, this question arises in the case, and, to be brief, I will simply refer to the principle without the actual facts: The court undertook here to give a definition of who are coservants; yet, it is so general that it it is almost misleading, if not quite so, to the jury. That is, it does not give the jury or the common juryman any information on that subject. It would give an attorney, or a man of learning in the law, but it would not give the ordinary juryman any information at all. The definition

is very general. The judge's attention was called to that, and a request was made applying the principle laid down in that definition, to the actual facts of this case. The court refused that request. That is error, and if is at all prejudicial, the judgment should be reversed on that ground, and we think, in this case, under this definition, under the facts in evidence, and under this request as it was made, that the court did err in not giving that request.

So, on these grounds, the case is reversed and remanded for a new trial.

*Hart & Canfield*, and *Kerruish, Chapman & Kerruish*, for plaintiff.

*Squire, Sanders & Dempsey*, and *Hoyt, Dustin & Kelley*, for defendant.