*CITIZENS' ELECTRIC RY. L. & P. CO. v. EMMETT BELL, ETC.

1. NEGLIGENCE—ELECTRIC WIRES IN STREET—DUTY TO PERSONS USING STREET.

A corporation, permitted to construct and maintain an electric street railway, with all the electric appliances incident thereto, in the public streets of a city, for the purpose of private gain, owes the duty to persons upon such streets of so conducting its business as not to injure them. It must, therefore, keep its wires out of the way of persons using the streets, so that they will not, by coming in contact with such wires, receive personal injuries, and the fact that it has not done so raises a presumption of negligence against it.

2. SAME—ELECTRIC WIRES—DEGREE OF CARE REQUIRED.

An electric company, permitted to use the public streets for its own purposes, is required to exercise a high, if not the highest, degree of care in the operation, construction, inspection and repair of its wres and poles, to the end that travelers along the highway may not be injured by its appliances; and, if a wire, charged with a deadly current of electricity, falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a boy lawfully passing along the highway injures him with its current, the law raises a *prima facie* case of negligence. The burden of proving that there was no negligence, in such case, is on the company. The maxim, *res ipsa loquitur*, applies.

3. CONTRIBUTORY NEGLIGENCE—DEGREE OF CARE EXPECTED FROM CHILDREN, QUESTION FOR JURY.

A child is held to such care and prudence only as are usual among children of his age and capacity. A child of seven years of age is not guilty of negligence if he exercise that degree of care which under like circumstances would reasonably be expected from one of his years and intelligence. Whether he used such care in a particular case is a question for the jury.

4. EXPERT EVIDENCE—OPINION OF PHYSICIAN.

A practicing physician, familiar with the nature, extent and condition of the injury in question, in its early stage or history, being asked as to the extent of the injury, or if he could, at the time of trial, determine as to whether or not the injury would be permanent, answers that he could form an opinion, may give it as his opinion that such injury is, or is not, permanent.

ERROR to Richland common pleas court.

The plaintiff below, Emmett Bell, an infant of the age of seven years, by his next friend, Andrew W. Bell, commenced this action in the court of common pleas of Richland county against The Citizens Electric Railway Light and Power Company, to recover damages for a

*Affirmed by Supreme Court, without report, May 3, 1904, 70 Ohio St. 482.

personal injury which he alleged to have suffered by reason of the negligence of the defendant company.

The plaintiff, after stating that defendant is a corporation organized under the laws of the state of Ohio, alleges that as such corporation, it conducts what is known as an electric street railway, the motive power of which is electricity, said electricity being conducted along and through wires that are suspended upon poles throughout certain streets in the city of Mansfield, Ohio; that as an incident to said wires at certain intervals along what is known as the main wires through and over which said current is carried, there is what is known as feed wires, which, when properly handled, are placed in such positions as to be harmless to anyone coming in contract with the same.

Plaintiff further says that on or about August, 19, 1901, at or near what is known as the northwest corner of the East Fourth street schoolhouse, in said city, one of said feed wires extended from the main wire over which said electric current passed to a certain pole and then to the ground below. That said feed wire was what is known as a live wire, that is to say charged or filled with electric current, and that said wire was carelessly, recklessly and negligently left lying upon the ground exposed and in such condition as to be of great danger to any person not acquainted with its dangerous character. That said wire was so left by defendant company, and on said August 19, 1901, the said Emmett Bell, a youth of tender years, to-wit, of the age of seven years, being unacquainted with the use or nature of the dangerous character of said wire, came in contact with the same, and by reason of the electric current contained therein, was dangerously burned and mutilated in and upon the index finger of his left hand; that his nervous system was greatly shocked, and he was thereby rendered sick, nervous and prostrated on account thereof; that his said finger to the present time is stiffened and in bad condition, and in all probability will never be of proper use to him. That on account of the wound made by the burning wire the said Emmett Bell was subject to great and excessive loss of blood, and otherwise shocked and rendered weak on account thereof. That said injuries were occasioned wholly on account of the negligence of the defendant company without any fault of the said Emmett Bell. Plaintiff says that on account of said injuries he has suffered great pain and distress of body and has been damaged in the sum of $3,000, for which he asks judgment.

The answer, for a first defense, admits that defendant is a corporation organized under the laws of the state of Ohio; that as such corporation it conducts what is known as the Electric Street railway, the mo-

tive power of which is electricity. It admits that said electricity is
.conducted along and through wires that are suspended upon poles
throughout certain streets of the city of Mansfield, and denies the other
allegations of the petition. For a second defense the defendant avers:
that whatever injury the said Emmett Bell sustained, if any, was caused
by his own negligence and fault, and not by reason of any fault of de-
fendant.

Plaintiff's reply to this second defense was a general denial.

The cause was tried to a jury, resulting in a verdict for plaintiff,
and the jury assessed his damages at $755. Motion for new trial, filed
by defendant, was overruled. Judgment was entered for the amount
of the verdict and costs. Bill of exceptions containing all the evidence
was taken and made a part of the record. Error is prosecuted to this
court to reverse the judgment of the court below.

**Cummings, McBride & Wolfe,** for plaintiff in error:

Failure of the trial court to state, in its charge to the jury, the issues
was prejudicial to the plaintiff in error because it failed to direct their
minds upon whom the burden of proof fell. 11 Am. & Eng. Enc. Law
(1 ed.) 240; Dassler v. Wisley, 32 Mo. 498; Missouri Coal & Oil Co.
v. Railway, 35 Mo. 84; 11 Enc. Pl. & Pr. 154; People v. Jackson Co.
92 Ill. 441; Wilbur v. Stoeple, 82 Mich. 344 [46 N. W. Rep. 724; 21
Am. St. Rep. 568]; Keatley v. Railway, 94 Iowa 685 [63 N. W. Rep.
560]; West v. Moody, 33 Iowa 137; Reid v. Mason, 14 Iowa 541;
Pharo v. Johnson, 15 Iowa 560; Beebe v. Stuttsman, 5 Iowa 271; Fitz-
gerald v. McCarty, 55 Iowa 702 [8 N. W. Rep. 646]; Porter v. Knight,
63 Iowa 365 [19 N. W. Rep. 282]; McKinney v. Hartman, 4 Iowa 154;
Bryan v. Railway, 63 Iowa 464 [19 N. W. Rep. 295]; Little v. McGuire,
43 Iowa 447.

Failure of court to charge as to burden of proof was error. Bergman
v. Hendrickson, 106 Wis. 434 [82 N. W. Rep. 304; 80 Am. St. Rep.
47]; White v. Thomas, 12 Ohio St. 312 [80 Am. Dec. 347]; Lewis v.
State, 4 Ohio 389.

The court had no right to tell the jury in the face of the allegation in
the petition and the denial in the answer, that the appliances that the plain-
tiff in error had upon its streets are "considered to be deadly" if one
comes in contact with them. Cline v. State, 43 Ohio St. 332; General
Convention v. Crocker, 4 Circ. Dec. 619 (7 R. 327); Cin. H. & D. Ry.
v. Hedges, 8 Circ. Dec. 265 (15 R. 254); 11 Am. & Eng. Enc. Law (1
ed.) 254; Straus v. Minzesheimer, 78 Ill. 492; Burrows v. Transporta-
tion Co. 106 Mich. 582 [64 N. W. Rep. 501; 29 L. R. A. 468]; Cin. H.
& D. Ry. v. Hedges, 8 Circ. Dec. 265 (15 R. 254).

Degree of care required from infants. Clev. Term. & V. Ry. v. Heiman, 9 Circ. Dec. 222 (16 R. 487); Springfield Consol. Ry. v. Welsch, 155 Ill. 511 [40 N. E. Rep. 1034]; Galveston, H. & H. Ry. v. Moore, 59 Tex. 64 [46 Am. Rep. 265]; Chicago City Ry. v. Wilcox, 138 Ill. 370 [27 N. E. Rep. 899; 21 L. R. A. 76]; Reed v. Madison (City), 83 Wis. 171 [53 N. W. Rep. 547; 17 L. R. A. 733].

Degree of care required from defendant. McCafferty v. Dock Co. 5 C. D. 262 (11 R. 457); Pitts. C. & St. L. Ry. v. Krouse, 30 Ohio St. 222; Globe Ins. Co. v. Sherlock, 25 Ohio St. 50; Lowe v. Lehman, 15 Ohio St. 179.

**Douglass & Mengert,** for defendant in error:

We maintain that a corporation or an individual who uses the public thoroughfare of a city by stringing wires charged with deadly currents of electricity for private gain or remuneration is chargeable with a higher degree of care than under other circumstances; that they must at their peril keep the street clean from these deadly wires so that a pedestrian upon the street may not come in contact therewith while lawfully using the streets; that where such corporation or individual permits a wire highly charged with a deadly electric current to remain upon the surface of the street or sidewalk or in such proximity thereto that a pedestrian comes in contact therewith while lawfully using such street or sidewalk, that the proof of the fact of the presence of such highly charged wire and the injury sustained therefrom, places the burden of proof upon such corporation or individual to remove the presumption of negligence upon its or his part. Newark Elec. L. & P. Co. v. Ruddy, 62 N. J. Law 505 [41 Atl. Rep. 712]; Snyder v. Electrical Co. 43 W. Va. 661 [28 S. E. Rep. 733; 39 L. R. A. 499; 64 Am. St. Rep. 922]; Haynes v. Gas Co. 114 N. C. 203 [19 S. E. Rep. 344; 26 L. R. A. 810; 41 Am. St. Rep. 786]; 21 Am. & Eng. Enc. Law (2 ed.) 512; Joyce, Electric Law Sec. 606.

Degree of care required from children. Rolling Mill Co. v. Corrigan, 46 Ohio St. 283 [20 N. E. Rep. 466; 15 Am. St. Rep. 596]; Lake Erie & W. Ry. v. Mackey, 53 Ohio St. 370 [41 N. E. Rep. 980; 29 L. R. A. 757; 53 Am. St. Rep. 640]; Cincinnati St. Ry. v. Wright, 54 Ohio St. 181 [43 N. E. Rep. 688; 32 L. R. A. 340]; Haynes v. Gas Co. 114 N. C. 203 [19 S. E. Rep. 344; 26 L. R. A. 810; 41 Am. St. Rep. 786]; Mangam v. Railway, 38 N. Y. 455 [98 Am. Dec. 66n.]; Illinios C. Ry. v. Slater, 129 Ill. 91 [21 N. E. Rep. 575; 6 L. R. A. 418; 16 Am. St. Rep. 242]; Gunn v. Railway, 42 W. Va. 676 [26 S. E. Rep. 546; 36 L. R. A. 575]; Pekin v. McMahon, 154 Ill. 141 [39 N. E. Rep. 484; 27 L. R. A. 206; 45 Am. St. Rep. 114].

Reasonable care. Toledo & W. Ry. v. Goddard, 25 Ind. 185; 16 Am. & Eng. Enc. Law (1 ed.) 402, 403.

**VOORHEES, J.**

The only questions presented and urged as reasons for a revresal of the judgment of the court below are: 1. In the admission of evidence offered by plaintiff below against the objections of defendant. 2. In the charge of the court. 3. In the court refusing to charge as requested by defendant below.

1. It is claimed that the court erred in permitting Doctor R. F. Boles to answer the following questions in his direct examination, to all of which questions and answers defendant objected; the court overruled the objection and defendant excepted.

"Q. From the extent of that injury could you determine whether or not it would be permanent?

"A. Well, that would be an absolute impossibility for me to tell. Perhaps I could form an opinion.

"Q. What do you say now as to whether or not, in your opinion, that injury will be permanent?

"A. My opinion was that the injury would be permanent.

"Q. What is your opinion now?

"A. I haven't seen it lately.

"Q. What is your opinion now, from what you saw at the time, as to whether or not the injury will be permanent?

"Court. He has answered that question.

"Q. What is your opinion now, based on what you then saw, as to whether it is a permanent injury or not?

"A. That is a difficult question for me to answer. I cannot tell now what the condition is.

"Q. Judging from his condition at that time, what is your opinion as to whether that will be a permanent injury, from what you saw at that time, are you still of the same opinion?

"A. My opinion is the same.

"Q. Suppose that this finger at this time is shrunken, and suppose that the boy, in the use of his hand, holds his finger out like that (illustrating), and suppose that when his mother would wash his hand he would cry, when she would wash that finger he would cry, and suppose that finger is now smaller than the other index finger, sweenied away somewhat, and when he touches anything there is evidence of his having pain in that finger, what would you say that would indicate as to whether the injury would be permanent?

"A. It would indicate permanent impairment."

It is contended that the evidence is incompetent on two grounds: First, that the petition does not allege permanent injury; second, the witness Dr. Boles does not qualify to give an opinion.

There was no motion filed to the petition to correct it in form. The allegations as to the injury are: That "his (plaintiff's) index finger of his left hand was dangerously burned and mutilated; that his nervous system was greatly shocked, he was rendered sick, nervous and became prostrated on account of said accident; that his said finger, even to the present time, is stiffened and in bad condition, and in all probability will never be of proper use to him."

If the petition will admit of proof as to the extent or permanency of the injury, it is by reason of this clause, "that his said finger, even to the present time, is stiffened and in bad condition, and in all probability will never be of proper use to him."

The allegations are indefinite and loosely drawn, but this is a defect in form and should have been corrected by motion. No objection having been taken to the pleading on this ground, a liberal construction is to be given to it, in the introduction of evidence, and it was not error to admit competent evidence as to the extent and permanency of the injury.

Did the court err in admitting the testimony of Dr. Boles as to the extent or permanency of the injury?

This depends upon whether the witness qualified himself to give an opinion. From the examination of the witness it appears he was somewhat familiar with the nature, extent and condition of the injury in its early stage or history. Knowing its early condition, and being a practicing physician, he is asked as to the extent of the injury, or if he could then, at the time of the trial, determine as to whether or not the injury would be permanent. He answers he could form an opinion, and he gives his opinion that it would be permanent.

The rule in such case is, that before such opinion is called for, it must appear that the witness has an opinion, or is then able to form one upon the matter in question. Such qualification of the witness, Dr. Boles, is shown in the record, and, therefore, it was not error to permit this evidence to go to the jury. Bellefontaine & I. Ry. v. Bailey, 11 Ohio St. 333, 337, and Koons v. State, 36 Ohio St. 195, 200, are authority in support of our conclusion.

2. The principal questions in this case arise upon the charge of the court and in refusing to charge as requested by defendant below.

The court, after stating the nature of the action, proceeded to charge the jury as follows:

"The principal question that really arises in the case is the degree of care that a person introducing modern electric machinery is required to exercise in order that the parties having a right to occupy the street the same as they have, in order that by the appliances they have, which are conceded to be deadly if one comes in contact with them; the question is, what degree of care must the party so occupying a public street in the city exercise in order to be regarded as free from negligence where a party is injured by a live wire.

"That degree of care depends upon the nature of the appliances that the party is using on the public highway. All I can say to you is, that it is only ordinary care under the circumstances, but that ordinary care may reach a very high degree. Ordinary care on some occasions may be extremely high degree of care, because of the deadly nature of the machinery that it sets to work.

"It probably will not be necessary for me to say anything to you in substance on the subject of the negligence of the child. He was only required to exercise that care and judgment and skill that you would expect a child of that age to exercise. Contributory negligence is not to be attributed to an infant, who, by reason of his infancy, has not acquired the capacity and ability to take care of himself under situations of danger.

"It was the duty of the defendant to exercise a high degree of care and a high degree of care would be only ordinary care to protect the public against live wires falling upon the streets of the city. It was the duty of the defendant to exercise a high degree of care, and a high degree of care under those circumstances would be only ordinary care to protect the public against the consequences that might reasonably be foreseen by it, that a live wire of that kind might inflict upon the citizen. It must use proper material, it must use a high degree of care in making its system safe, and if it does not do that, and by reason of any want of care of that kind, a child, not having reached the age of discretion, is injured on the public streets of the city by its defective system, it is liable. That is all I need to say to you on the subject of the liability of the defendant and the conduct of the plaintiff."

Exceptions to the charge as given and to the refusal of the court to charge as requested raise the questions of law of the case, and it must be conceded at the very threshold, that the questions are new and important in the law of negligence, especially so far as decisions in our own state are concerned.

It is either admitted in the pleadings or disclosed in the record in this case, that the electric railway company, defendant below, at the

time of the injuries complained of, operated an electric street railway in the city of Mansfield, Ohio, the motive power of which was electricity, conducted along and through wires suspended upon poles throughout certain streets in said city; that the wire in question was owned by said company and was attached to its main wire on East Fourth street in said city and used for the purpose of furnishing power to drive a motor in a small manufacturing plant, and that the electric current was communicated to this wire from said main wire. That at the time of the accident and the injury to the plaintiff complained of this wire in question was broken, and the`end which was attached to the main wire was charged and was hanging down one of the poles upon which it had been suspended, and the broken end was lying on a grass plot between the side walk and the street proper on said East Fourth street, at the corner of an alley running at right angles with said street. That the insulation on this broken wire was defective and the wire itself exposed. And further, that it had been so broken and lying on the ground for at least twenty-four hours before the accident complained of occurred. It also appears from the record that the plaintiff below was a boy seven or eight years of age and was living with his parents on said East Fourth street almost directly opposite the place where this broken wire was lying on the ground. That while playing on the sidewalk this boy came in contract with this charged wire so lying upon the grassplot and received the injuries complained of.

At the conclusion of the testimony offered by the plaintiff the defendant company submitted a motion asking the court to take the case from the jury and direct a verdict in favor of defendant. The court overruled said motion and the defendant at the time excepted. Thereupon the defendant rested its case.

Is it to be presumed from these facts alone that there was such negligence on the part of the electric company as to require it to show that the dangerous condition of its property was not attributable to its negligence, but from some defect which in the exercise of that reasonable care and prudence proper in the case of electric wires, it was unable to discover, or some accident beyond its control? In other words, was it from unavoidable accident?

In the case of an electric wire, in the position and condition that this one is assumed to be, the law raises a *prima facie* case of negligence against the owner. As a rule negligence is not presumed, but there are cases where the maxim, *res ipsa loquitur,* is directly applicable, and from the thing done or omitted negligence or care is presumed. In our judgment this is a case wherein that maxim applies. The rule cannot be more

concisely stated, in its generality, than as given in Scott v. Railway Docks Co. 3 Hurl. & Colt. 596, where the court held:

"There must be some reasonable evidence of negligence. But where the thing is shown to be under the managemnt of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care."

This doctrine has been applied to those using electricity in streets. Public policy, from sheer necessity, must require of a person or corporation using the current of electricity in high tension along highways a very high if not the highest degree of care, and this high degree would seem all the more reasonable to justify this rule of presumptive negligence in such case. The degree of care in the nature of the case being high, and there being little danger if such care be exercised, if an accident happens there is offered a probability of the absence of that care.

In the case of Newark Elec. L. & P. Co. v. Ruddy, 62 N. J. Law 505 [41 Atl. Rep. 712, 713; 57 L. R. A. 624], the court held:

"Proof that an electric light wire, controlled by a private corporation, and normally suspended upon poles along a public street, was trailing broken on the sidewalk, affords a presumption of negligence in a suit against such corporation by a person injured through electric shock by contact with such wire. 'Res ipsa loquitur.' "

In that case the plaintiff, a child of eight years, picked up from the sidewalk of a public street the end of a broken wire that trailed from one of the poles on which it should have hung suspended, and sustained severe injury through electric shock. The wire was an electric light wire, under the control of the defendant. No explanation or exculpatory evidence was offered in defense.

Collins, J., on page 506, says:

"The defendant was, by law, permitted to suspend along a public street a wire so charged with electricity as to be dangerous to the public if it should break and fall upon the street. This privilege entailed upon it a very high degree of care to maintain the wire intact. It was permissible to presume a lack of exercise of such care when the proof showed the wire broken and trailing on the sidewalk under conditions that rendered possible serious injury to persons lawfully there. Unexplained, the presence on the highway of the charged and broken wire, and the fact of injury received therefrom, justified an inference of negligence in the defendant in whose control and management it was. Such an inference has been judicially permitted even when the wire that

broke received the electricity from a wire on which it fell. .Haynes v. Gas Co. 114 N. Car. 203.''

In the case of Haynes v. Gas Co. 114 N. C. 203 [19 S. E. Rep. 344; 41 Am. St. Rep. 786; 26 L. R. A. 810], the court held:

''If a corporation is permitted to maintain electric wires in the public streets, and one of such wires is detached from a tree to which it has been fastened, and is hanging to the ground charged with a deadly current of electricity, which it received in coming in contact with the feed wire of another corporation, and a boy taking hold of the wire is killed, the corporation to which the detached wire belongs is presumed to have been negligent, and must assume, in an action for damages resulting from such killing, the burden of proving that there was no negligence on its part.

''Proof that there was a ''live'' wire (carrying a deadly current) down in the highway surely raised a presumption that some one had failed in his duty to the public.

''Electric corporations permitted to use the public streets for their own purposes must be required to exercise the utmost degree of care in the construction, inspection, and repair of their wires and poles, to the end that travellers along the highway may not be injured by their appliances.''

In the case of Snyder v. Electrical Co. 43 W. Va. 661 [28 S. E. Rep. 733, 735; 39 L. R. A. 499; 64 Am. St. Rep. 922]; the court in the syllabus uses this language:

''There must be reasonable evidence of negligence   But where the thing is shown under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.

''A high, if not the highest, degree of care is exacted of operators of electricity, and, if a wire, charged with a deadly current of electricity, falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current, the law raises a *prima facie* case of negligence. This presumption, however, is by no means final or conclusive, but may, in the absence of specific neglect connected with the incident, be repelled by evidence of a uniformly careful, prudent management, commensurate with the dangerous character of the wire, and adequate to the safety of the public.''

Brannon, J., on page 664 says:

"Suppose there is no evidence of negligence on the part of the defendant, does the mere fact that the wire fell create a *prima facie* presumption of negligence, sufficient, in the absence of something appearing in the case to repel that presumption, to support the action? This involves the rule or principle of *res ipsa loquitur,*— the thing itself speaks. A wire charged with a deadly current of electricity falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current. Are we to presume that its fall came from some negligence of the owner, unless the circumstances of the case or facts shown by him shall show that its fall is not attributable to his negligence, but from some defect which that reasonable care and prudence proper in the case of such deadly wire was unable to discover, or some accident beyond his control; in other words, from inevitable accident? I answer that the law raises a *prima facie* case of negligence."

In 2 Jaggard, Torts, page 864, the author says:

"A live wire, however, is exceedingly dangerous, so that proof of contact therewith, and consequent damages, makes it a complete case of *prima facie* negligence, and throws the burden on the defendant to show that such wire was in the street without fault on his part. Generally, companies using electricity on lines along a street are charged with the highest degree of care, having due reference to existing knowledge in the construction, inspection, and repair of their wires and poles, and in the use of devices to guard against harm."

Other authorities in harmony with the above are: Columbus & X. Ry. v. Webb, 12 Ohio St. 475, 496; Railway v. Shields, 47 Ohio St. 387 [24 N. E. Rep. 658; 8 L. R. A. 464; 21 Am. St. Rep. 840]; Western Union Tel. Co. v. State, 82 Md. 293 [33 Atl. Rep. 763; 31 L. R. A. 572; 51 Am. St. Rep. 464]; Denver Consolidated Elec. Co. v. Simpson, 21 Colo. 371 [41 Pac. Rep. 499; 31 L. R. A. 566]; Western Union Tel Co. v. Thorn, 64 Fed. Rep. 287 [12 C. C. A. 104; 28 U. S. App. 123]; Leavenworth Coal Co. v. Ratchford, 5 Kan. App. 150 [48 Pac. Rep. 927].

Such being the law applicable to the case at bar, we think the court charged it correctly, and it follows as a necessary sequence, that the court did not err in refusing defendant's request, wherein the court was requested to charge. First, "You are instructed to bring a verdict for defendant," and second, "If the court refuse to charge the foregoing, then the defendant requests the court to instruct the jury that the burden is on the plaintiff to prove that said wire was broken through

which the current of electricity was carried from defendant's wire through and to the hand of said child, but moreover it must appear from the evidence that defendant company had knowledge of said broken wire and defective condition, and reasonable time had elapsed within which to repair the same."

3.   It is contended that this child was guilty of contributory negligence.   It will not be necessary to spend time on this question.   It is conceded that the age of the child was seven years, which brings the case clearly within the rule laid down by our Supreme Court in the case of Lake E. & W. Ry. v. Mackey, 53 Ohio. St. 370 [41 N. E. Rep. 980; 29 L. R. A. 757; 53 Am. St. Rep. 640], wherein the court held that "A child of nine years of age is not guilty of negligence if he exercises that degree of care which under like circumstances would reasonably be expected from one of his years and intelligence," and that "Whether he used such care in a particular case is a question for the jury."

We find no error in the record and the judgment is affirmed.

**Douglass** and **Donahue, JJ.,** concur.